03-CV-01053-DISCL

The Honorable Marsha J. Pechman

CC TO JUDGE __DJ__

___ FILED ___ ENTERED
___ LODGED ___ RECEIVED

JUL 14 2003   DJ

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
## AT SEATTLE

| | |
|---|---|
| BOTIMA MANGUNGU and GRACE MANGUNGU,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF SEATTLE; SEATTLE POLICE DEPARTMENT; OFFICER TOM CONRAD and JANE DOE CONRAD, husband and wife and the marital community composed thereof; and SERGEANT STEVEN JANDOC and JANE DOE JANDOC, husband and wife and the marital community composed thereof,<br><br>Defendants. | No. C03-1053P<br><br>**DEFENDANTS' RULE 26(A)(1) INITIAL DISCLOSURES** |

Defendants submit the following initial disclosures pursuant to FRCP 26 (a)(1):

## I. LAY WITNESSES

**1.   Botima Mangungu.**

Plaintiff Botima Mangungu may testify to the facts and circumstances of the incident and allegations described in the Complaint.

DEFENDANTS' RULE 26(A)(1)
INITIAL DISCLOSURES - 1
C03-1053P

STAFFORD FREY COOPER
— Professional Corporation —
A T T O R N E Y S
2500 Rainier Tower
1301 Fifth Avenue
Seattle, Washington 98101-2621
Telephone (206) 623-9900

M:\Clients\3019\24597\PLD Initial Disclosures1.doc

2. **Grace Mangungu**

Plaintiff Grace Mangungu may testify to the facts and circumstances of the incident described in the Complaint.

3. **Officer Juan Tovar**
c/o Stafford Frey Cooper, P.C.
1301 Fifth Avenue, Suite 2500
Seattle, WA  98101-2621

Officer Tovar may testify to the facts and circumstances of the April 23, 2001 incident identified in plaintiffs' Complaint

4. **Detective Tom Conrad**
c/o Stafford Frey Cooper, P.C.
1301 Fifth Avenue, Suite 2500
Seattle, WA  98101-2621

Detective Conrad may testify to the facts and circumstances of the April 23, 2001 incident identified in plaintiffs' Complaint.

5. **Sergeant Steve Jandoc**
c/o Stafford Frey Cooper, P.C.
1301 Fifth Avenue, Suite 2500
Seattle, WA  98101-2621

Sgt. Jandoc may testify to the facts and circumstances of the April 23, 2001 incident identified in plaintiffs' Complaint.

DEFENDANTS' RULE 26(A)(1)
INITIAL DISCLOSURES - 2
C03-1053P

M:\CLIENTS\3019\24597\PLD INITIAL DISCLOSURES1.DOC

STAFFORD FREY COOPER
———— Professional Corporation ————
A T T O R N E Y S
2500 RAINIER TOWER
1301 FIFTH AVENUE
SEATTLE, WASHINGTON 98101-2621
TELEPHONE (206) 623-9900

6.  **Officer Sage Farwell**
    c/o Stafford Frey Cooper, P.C.
    1301 Fifth Avenue, Suite 2500
    Seattle, WA 98101-2621

Officer Farwell may testify to the facts and circumstances of the April 23, 2001 incident identified in plaintiffs' Complaint.

7.  **Officer P. MacDonald**
    c/o Stafford Frey Cooper, P.C.
    1301 Fifth Avenue, Suite 2500
    Seattle, WA 98101-2621

Officer MacDonald may testify to the facts and circumstances of the April 23, 2001 incident identified in plaintiffs' Complaint.

8.  **Officer Donald Bolton**
    c/o Stafford Frey Cooper, P.C.
    1301 Fifth Avenue, Suite 2500
    Seattle, WA 98101-2621

Officer Bolton may testify to the facts and circumstances of the April 23, 2001 incident identified in plaintiffs' Complaint.

9.  **Officer Mark Grinstead**
    c/o Stafford Frey Cooper, P.C.
    1301 Fifth Avenue, Suite 2500
    Seattle, WA 98101-2621

Officer Grinstead may testify to the facts and circumstances of the April 23, 2001 incident identified in plaintiffs' Complaint.

DEFENDANTS' RULE 26(A)(1)
INITIAL DISCLOSURES - 3
C03-1053P

STAFFORD FREY COOPER
———— Professional Corporation ————
A T T O R N E Y S
2500 RAINIER TOWER
1301 FIFTH AVENUE
SEATTLE, WASHINGTON 98101-2621
TELEPHONE (206) 623-9900

M:\CLIENTS\3019\24597\PLD INITIAL DISCLOSURES1.DOC

**10.** **Special Agent Michael J. McCluskey**
Federal Bureau of Investigations Seattle Office
1110 Third Avenue
Seattle, Washington 98101-2904

Special Agent McCluskey may testify to the facts and circumstances of the April 23, 2001 incident identified in plaintiffs' Complaint.

**11.** Defendants may call employees of U.S. Bank at 1619 3rd, Seattle, Washington, to testify to the facts and circumstances of the April 23, 2001 incident identified in plaintiffs' Complaint.

Discovery is continuing. Defendants reserve the right to call additional witnesses, including lay and expert witnesses. Defendants also reserve the right to call any witnesses listed by plaintiffs.

## II. EXPERT WITNESSES

Defendants have not engaged an expert witness. Defendants reserve the right to identify an expert witness as discovery continues.

## III. DOCUMENTS

Attached are a copy of the Seattle Police Department Incident Report 01-188782, the follow-up report by Detective Jandoc, and incident statements from Detective Conrad, Officers Farwell, Grinstead, Bolton, and MacDonald, that defendants may use to support their defenses.

This disclosure may be supplemented as discovery continues in this matter. Defendants have not identified each document or exhibit to be used at trial. Discovery is continuing and defendants reserve the right to disclose documents and exhibits for use at trial.

DEFENDANTS' RULE 26(A)(1)
INITIAL DISCLOSURES - 4
C03-1053P

STAFFORD FREY COOPER
*Professional Corporation*
ATTORNEYS
2500 RAINIER TOWER
1301 FIFTH AVENUE
SEATTLE, WASHINGTON 98101-2621
TELEPHONE (206) 623-9900

M:\CLIENTS\3019\24597\PLD INITIAL DISCLOSURES1.DOC

RESPECTFULLY SUBMITTED this 14 day of July, 2003

**STAFFORD FREY COOPER**
*Professional Corporation*

By _____
Stephen P. Larson, WSBA #4959
Jeff T. Gutierrez, WSBA #31971
Attorneys for Defendants City of Seattle,
Sgt. Steve Jandoc and Det. Tom Conrad

DEFENDANTS' RULE 26(A)(1)
INITIAL DISCLOSURES - 5
C03-1053P

M:\CLIENTS\3019\24597\PLD INITIAL DISCLOSURES1.DOC

STAFFORD FREY COOPER
*Professional Corporation*
A T T O R N E Y S
2500 RAINIER TOWER
1301 FIFTH AVENUE
SEATTLE, WASHINGTON 98101-2621
TELEPHONE (206) 623-9900

## Certificate of Service

The undersigned certifies under the penalty of perjury according to the laws of the United States and the State of Washington that on this date I caused to be served in the manner noted below a copy of this document entitled **DEFENDANTS' RULE 26(A)(1) INITIAL DISCLOSURES** on the following individual:

Andrew W. Schwarz
Suite 320
119 First Avenue South
Seattle, WA  98104

*Attorneys for Plaintiffs*

[ ] Via Facsimile
[ ] Via Mail
[X] Via Messenger

DATED this ____14th____ day of July, 2003, at Seattle, Washington.

_____ (signature)

DEFENDANTS' RULE 26(A)(1)
INITIAL DISCLOSURES - 6
C03-1053P

M:\CLIENTS\3019\24597\PLD INITIAL DISCLOSURES1.DOC

STAFFORD FREY COOPER
—— Professional Corporation ——
A T T O R N E Y S
2500 RAINIER TOWER
1301 FIFTH AVENUE
SEATTLE, WASHINGTON 98101-2621
TELEPHONE (206) 623-9900

# SEATTLE POLICE DEPARTMENT — INCIDENT REPORT

**Date stamp:** 23 APR 01
**Incident Number:** 01-188791

- [ ] DO NOT DISCLOSE
- [x] NOT DISCUSSED
- [ ] DISCLOSE

THE PERSON MAKING THIS REPORT HEREBY DECLARES THE FACTS HEREIN ARE TRUE AND CORRECT, AND UNDERSTANDS THAT BY FILING A FALSE REPORT, THEY MAY BE SUBJECT TO CRIMINAL PROSECUTION. **X**

- [ ] INCIDENT
- [x] INCIDENT AND ARREST
- [ ] ARREST ONLY

- [ ] HAZARD TO OFFICER
- [ ] DOMESTIC VIOLENCE
- [ ] BIAS CRIME

| INCIDENT CLASSIFICATION | TOOL/WEAPON USED | METHOD OF TOOL/WEAPON USE |
|---|---|---|
| Robbery | Note | |

| LOCATION | FIRM NAME | CENSUS | BEAT |
|---|---|---|---|
| 1619 3 Ave | US Bank | 081 | M1 |

| TYPE OF PREMISE | POINT OF ENTRY |
|---|---|
| Bank | Front Door |

| DATE/TIME REPORTED | DAY OF WEEK | DATE(S)/TIME(S) OCCURRED | DAY(S) OF WEEK |
|---|---|---|---|
| 042301/1206 | Monday | 042301/1200 | Monday |

- [x] PROPERTY STOLEN / RECOVERED (PROPERTY FORM 5.37.1 MUST BE ATTACHED)
- [ ] NOTHING TAKEN
- [ ] UNKNOWN AT TIME OF REPORT
- [ ] VICTIM FOLLOW-UP LEFT
- [x] EVIDENCE SUBMITTED
- [x] FINGERPRINT SEARCH MADE
- [ ] FINGERPRINTS FOUND
- [ ] LAB EXAM REQUESTED

INJURED - 1
HAS USABLE TESTIMONY - 2
DO NOT DISCLOSE - 3

CODE: C (PERSON REPORTING, COMPLAINANT)  V (VICTIM)  W (WITNESS)

| CODE | NAME | RACE/SEX/DOB | HOME PHONE | HOURS | |
|---|---|---|---|---|---|
| V | US Bank | ----- | ----- | ----- | |
| ADDRESS | ZIP CODE | OCCUPATION | WORK PHONE | HOURS | |
| 1619 3 Ave | ----- | ----- | 624-8552 | Days | |
| W | [redacted] | [redacted] | ----- | ----- | 2[x] |
| ADDRESS | ZIP CODE | OCCUPATION | WORK PHONE | HOURS | 3[x] |
| 1619 3 Ave. | | TELLER | [redacted] | Days | |

### Suspect #1

| NAME | RACE/SEX/DOB | HEIGHT | WEIGHT | HAIR | EYES | SKIN TONE | BUILD |
|---|---|---|---|---|---|---|---|
| Smith, Aubrey Jr. | B/M/052158 | 5-07 | 145 | BLK | BRO | Dark | MED |

| ADDRESS | HOME PHONE | WORK PHONE | WORK HOURS | OCCUPATION | EMPLOYER/SCHOOL |
|---|---|---|---|---|---|
| Transient | ----- | ----- | ----- | ----- | ----- |

CLOTHING, SCARS, MARKS, TATTOOS, PECULIARITIES, A.K.A.: Tan coat, black hat, and carrying a Bartells' bag.

RELATIONSHIP TO VICTIM: NONE

CHARGE DETAILS: Investigation of Robbery

- [x] BOOKED
- [ ] YSC
- [ ] CITED
- [x] KCJ

---

**ITEM #**

1. FBI Agent Kash, Michael W. W/M/Adult. 1110 3 Ave Seattle, WA 98101. (206) 622-0460.

5. Suspect Smith left the note that he used to rob the bank with Witness [redacted] at the bank. Officer Tovar recovered the note, and transferred custody of the note to Agent Kash.

   Officer Tovar retrieved the surveillance video tape of the bank's monitoring system, and transferred custody of the video tape to Agent Kash.

9. On the above date and time, I responded to 1619 3 Ave (US Bank) to investigate a bank robbery. Upon arriving at the bank I met with Witness [redacted]. Witness [redacted] indicated that a Black male approached her counter and handed her a note on a pink piece of paper. Witness [redacted] described this male as 5-08, 150 lbs., wearing a tan coat, and a black hat.

---

I HEREBY CERTIFY (DECLARE) UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE STATE OF WASHINGTON THAT THIS REPORT IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF (RCW 9A.72.085)

| PRIMARY OFFICER'S SIGNATURE | SERIAL # | UNIT # | DATE SIGNED | PLACE SIGNED |
|---|---|---|---|---|
| J. Tovar | 6286 | 412 | 4/23/01 | SEATTLE, WA |

PRIMARY OFFICER'S PRINTED NAME: J. Tovar

DISTRIBUTION: PRECINCT ( )
- [x] CRIMES AGAINST PERSONS
- [ ] N [ ] S [ ] C JUV
- [ ] COURT UNIT
- [ ] K-9 UNIT
- [ ] CRIMES/PROPERTY
- [ ] VICE/NARC
- [ ] CRIME ANALYSIS
- [ ] OTHER

PAGE 1 OF 2

Form 5.37A CS 21.924 Rev. 6/97



**SEATTLE POLICE DEPARTMENT**

**CONTINUATION SHEET**

INCIDENT NUMBER: 01-188791
UNIT FILE NUMBER: 412

| ITEM OR ENTRY | INCIDENT / INCIDENT AND ARREST / ARREST ONLY | FOLLOW-UP / TRAFFIC / COLLISION / SUPERFORM | OTHER: (specify) | PAGE 2 OF 2 |

Witness ▮▮▮ indicated that she read the note and it read "no button's, not problems from coat! 20's, 50's, 100's." Witness ▮▮▮ immediately realized that she was being robbed, and she asked the suspect "all you want is 20's, 50's, and 100's?" The suspect said "yeah hurry up, hurry up!" Witness ▮▮▮ handed the suspect an un-determined amount of US currency, and the suspect left eastbound out of the bank.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Patrol officers were alerted of the bank robbery, and the suspect was arrested in the area of 7 Ave. and Stewart St. Once the suspect was arrested, he was identified as Suspect Smith, Aubrey Jr. FBI Agent Kash responded to the bank and took over the scene.

| INVESTIGATING OFFICER | SERIAL | UNIT | INVESTIGATING OFFICER | SERIAL | UNIT | APPROVING OFFICER | SERIAL |
|---|---|---|---|---|---|---|---|
| J. Tovar | 6286 | 412 | | | | | 5284 |



| SEATTLE POLICE DEPARTMENT | FOLLOW-UP REPORT | INCIDENT NUMBER 01-188782 |
|---|---|---|
| | | UNIT FILE NUMBER 91 A SE 85821 |

| TYPE OF INCIDENT | DATE OF INCIDENT | PRESENT DATE |
|---|---|---|
| Bank Robbery | 4/23/2001 | 4/24/2001 |

| ORIGINALLY REPORTED AS | LOCATION OF INCIDENT |
|---|---|
| Same | 1619 3rd Av. Seattle, WA |

| VICTIM | ADDRESS | PHONE |
|---|---|---|
| U.S. Bank | 1619 3rd Av. Seattle, WA 98101 | 206 344-2161 |

**CASE DISPOSITION:** CLEARED (ARREST-UNFOUNDED-REFERRAL JUVENILE COURT.-EXCEPTIONAL CLEARANCE); AT LARGE WARRANT; ETC.
Arrest

**PROPERTY:** RECOVERED ☐   ADDITIONAL STOLEN ☐   FURTHER DESCRIPTION ☐   (INDICATE ID MARKS—COLORS—SIZES—SERIAL NUMBERS—DISPOSITION—VALUE, ETC. AS FIRST ENTRY BELOW)

ENTRY
SUSPECTS: INCLUDE NAMES, B/A NUMBERS, DESCRIPTIONS, DISPOSITION, CAN VICTIM IDENTIFY, ETC
GENERAL: SUMMARIZE STEPS OF INVESTIGATION: INCLUDE PERSONS INTERVIEWED, ADDITIONAL WITNESSES, RESULTS OF INTERROGATIONS, EVIDENCE, BUSINESS ADDRESSES AND PHONES, ETC.
CASE M.O.: INDICATE ADDTIONAL M.O. FACTORS NOT INCLUDED ON OFFENSE REPORT

**DC** Data Center: Index as verified suspect:   Smith, Aubrey Jr.
B/M/5-21-58
LKA: Blackwood-Clementon #D-156
     Clementon, NJ 08021
CCN: 1766107
BA: 201118023

Charge: Robbery 2
Court: King County Superior Court
Bail: $500,000.00
Cause: 011042706
PCN: 007771886

ORIGINAL
ITS/ENT-MOD-CLR RW
D:

Summary: On 4-23-01 at approx. 1206 hrs. a lone black male (robber) entered the U.S. Bank, 1619 3rd Av., Seattle, WA., and presented the victim teller a deposit slip with writing on it. The teller read the note with words written something to the effect of, "20's, 50's, 100's, no alarms, no screaming, no trouble from the coat". The teller believed she was being robbed and the robber had a gun in his coat. The teller complied with the demands and gave the robber money from her drawer including a "confidential device". The teller put the money and device into a "Bartell's shopping bag". The robber took the bag and walked out of the bank. The robber was described as a black male, 40's, 5'8-5'9, 200 lbs., wearing a tan jacket. The robbery was captured on surveillance video.

Seattle Police and FBI Puget Sound Violent Crimes Task Force responded to the bank and processed the scene. At approx. 1222 hrs. Seattle Police Patrol Units received reliable information that a black male, later identified as Aubrey Smith Jr., was in possession of the confidential device. Smith was placed under arrest at 7th Av. and Stewart St. Search incident to arrest, Smith was found in possession of a Bartell's bag containing the confidential device and a large sum of money.

Seattle Police conducted a witness show up at the arrest location. The victim teller looked at Smith and told the officers, "I think that's him, yeah that's probably him, but I can't swear by it".

Smith was transported to the Seattle FBI Office. Smith read, acknowledged, and signed his rights. Smith provided a written statement admitting to robbing the U.S. Bank, 1619 3rd Av., Seattle, WA.

The money from the Bartell's bag was compared to the bait bill list provided by U.S. Bank. Several bills from the Bartell's bag matched bait bills pre-recorded on a U.S. Bank bait money record form.

**PROCESSED BY ATTACHMENT TEAM #9**

I CERTIFY (DECLARE) UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE STATE OF WASHINGTON THAT THIS REPORT IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF(RCW 9A.72.085)

| PRIMARY OFFICER'S SIGNATURE | SERIAL # 5021 | UNIT # 730 | DATE SIGNED 4-25-01 | PLACE SIGNED SEATTLE, WA |
|---|---|---|---|---|
| PRIMARY OFFICER'S PRINTED NAME Det. S. Jandoc | SECONDARY OFFICER | SERIAL   UNIT | APPROVING OFFICER | SERIAL |

DISTRIBUTION:   RECORDS   DETECTIVES   PRECINCT ( )   COURT UNIT   ID   JUVENILE   OTHER:

Form 5.8.2 CS 21.865 Rev 12/97



| SEATTLE POLICE DEPARTMENT | CONTINUATION SHEET | INCIDENT NUMBER 01-188782 |
|---|---|---|
| | | UNIT FILE NUMBER 91 A SE 85821 |

| ITEM OR ENTRY | INCIDENT INCIDENT AND ARREST ARREST ONLY | FOLLOW-UP TRAFFIC / COLLISION SUPERFORM | OTHER: (specify) | PAGE 2 OF 4 |
|---|---|---|---|---|

1  4-23-01 1207 hrs. Seattle Police Radio broadcasted a priority alarm. I switched to the tactical frequency used for PDT (Police Department Tracking). I responded in my Task Force issued, PDT equipped vehicle. Det. Conrad and SA McCluskey were my passengers. As I drove northbound on 4th Av. from Spring St. SPD radio broadcasted a bank robbery had occurred at the U.S. Bank, 1619 3rd Av., and the suspect description was a black male, 40's, 5'8, shaggy hair, wearing a hat. While northbound on 4th Av. at approx. Union St. I began to receive reliable information that a confidential device was north of my location, 4-6 bars on my signal strength display. I continued north on 4th Av. As I continued northbound on 4th Av. my signal strength display increased to 6-8 bars. At 4th Av. and Stewart St. I began receiving reliable information that the confidential device was east of my location. I continued northbound to Virginia St. and turned eastbound from 4th Av. I continued eastbound to 8th Av. I began receiving reliable information that the confidential device was south of my location. My signal strength display registered a steady 8 bars east of my location. I drove southbound on 8th Av. from Virginia St. As I approached Stewart St. I began receiving reliable information that the confidential device was in the Greyhound Station at 8th Av. and Stewart St., 10-12 bars on my signal strength display. I drove eastbound on Stewart St. then southbound on 9th Av. By driving around three sides of the Greyhound Bus Station I confirmed that the confidential device was within the Greyhound Bus Terminal. I broadcasted on SPD radio that I had reliable information that the confidential device was in the Greyhound Bus Terminal. I requested other units set up containment around the bus terminal. Det. Conrad and SA McCluskey stopped and detained a subject. I utilized my PDT Pocket Detector. I scanned the subject and determined that the confidential device was not on the subject. I coordinated searches of three Greyhound buses parked on the south side of the terminal. The searches turned up negative. During the entire search, I continually checked my vehicle PDT display and continued receiving reliable information that the confidential device was between the south and north boundaries of the terminal. At approx. 1222 hrs. I heard SPD Units advised that they were receiving reliable information from a black male matching the robbery suspect description who exited the north side of the terminal and walked to 7th Av. and Stewart St. I responded to 7th Av. and Stewart St. I contacted Off. Farwell who advised me that while on containment infront of the Greyhound Bus Terminal he received reliable information coming from a black male (later identified as Aubrey Smith) matching the robbery suspect description who had just exited the north side of the bus terminal. Off. Farwell advised that he and Off. Bolton and Off. Grinstead all confirmed that the black male was in possession of the confidential device. All of the mentioned officers were driving SPD PDT vehicles. All of the mentioned officers made contact with Smith. During contact Off. Farwell noticed a Bartell's bag sticking out of a tan coat Smith was carrying. Off. Farwell opened the bag and located the confidential device and a large amount of money. Off. Farwell advised me that he read Smith his rights and Smith acknowledged understanding his rights. I observed Smith sitting in the back of Off. Grinstead's vehicle. I introduced myself to Smith and advised him who I was. I asked Smith if he was all right. Smith stated that he was all right. I advised Smith he was under arrest for robbing the bank. Moments later, a patrol unit arrived with a witness from the bank. I had Smith step out of the car and stand with me in plain view. Off. Farwell went to the patrol car. Off. Farwell signaled to me with a thumbs up that the witness identified Smith as the bank robber. I sat Smith back down in the back seat of the patrol unit. I advised Smith I knew he robbed the bank and I was hoping for his cooperation. I advised Smith that I would talk with him at the FBI Office.

2  4-23-01 1245 hrs. Officers Grinstead, Bolton, Farwell, Det. Conrad, SA McCluskey and myself arrived at the FBI Office. Smith was placed into an interview room. All evidence recovered by arresting officers were turned over to SA McCluskey. At approx. 1325 hrs. Det. Conrad and I entered the interview room. I asked Smith if he wanted anything to drink. Smith said yes. We provided Smith a Pepsi. I advised Smith we had a solid case against him and I was hoping to get his cooperation. I advised Smith that he had the bank money on him at the time of his arrest and the teller identified him as the robber. At that point I told him I had excellent photos of the robbery. I asked Smith if he wanted to see them. Smith stated yes. I laid down several bank surveillance photos SA Kash obtained from the surveillance video of the robbery. Smith looked at the photos, blurted out a sigh and stated,

| INVESTIGATING OFFICER | SERIAL | UNIT | INVESTIGATING OFFICER | SERIAL | UNIT | APPROVING OFFICER | SERIAL |
|---|---|---|---|---|---|---|---|
| Det. S. Jandoc | 5021 | 730 | ORIGINAL | | | *[signature]* 4/193 | |

Form 5.7.2  CS 21.866  Rev. 4/97



| SEATTLE POLICE DEPARTMENT | CONTINUATION SHEET | INCIDENT NUMBER 01-188782 |
|---|---|---|
| | | UNIT FILE NUMBER 91 A SE 85821 |

| ITEM OR ENTRY | INCIDENT INCIDENT AND ARREST ARREST ONLY | FOLLOW-UP TRAFFIC / COLLISION SUPERFORM | OTHER: (specify) | PAGE 3 OF 4 |

"that's fucked up, I guess this is pretty much a done deal". Smith then stated, "I just want to say this first". Smith then narrated how he just came to Seattle on a Greyhound from New York, trying to relocate from Newark, NJ. Smith stated that he just arrived into Seattle on Saturday, 4-23-01, in the morning. Smith stated upon arrival at the Seattle Greyhound bus terminal he put his work clothes and other personal items into two lockers at the bus terminal. Smith stated that he had some money to live on and went down to the Pike Place Market. Smith stated that while at the Pike Place Market he was pick-pocketed. Smith stated that all his money was taken. Smith stated he spent the night sleeping in the Greyhound bus terminal. Smith stated he had no family in the area and no means of support. Smith stated he couldn't get his work clothes out of the locker to get some work because his money was stolen and he had to pay the locker machine inorder to open the two lockers he rented. Smith stated he tried to spend Sunday night, 4-22-01 in the bus terminal but was kicked out early in the morning. Smith stated he slept outside the bus terminal. Smith stated on Monday morning he was getting desperate because he had not eaten in two days. Smith stated he called the Red Cross and received directions to the Red Cross Office on Rainier Av. and S. State St. Smith stated he caught the bus down to the Red Cross Office and received a sack of food. Smith stated the food was mostly canned items and could not carry it around. Smith went on about how he was on unemployment assistance in New Jersey and wanted to get a new start in Seattle. Smith kept on looking at the surveillance photos. I then stated to Smith, "bottom line, is that you in the photos robbing the bank". Smith looked at the photos and stated, "yes, that's me". I asked Smith if he had any drug problems. Smith said that he used to use drugs. I asked Smith why he chose to rob banks. Smith said he saw on TV all you had to do is pass a note, get the money, and no one gets hurt. Smith stated that this was the only way he knew he could get money without hurting anyone. At approx. 1334 hrs. I presented Smith with a SPD explanation of rights form. I asked Smith to read his rights out loud to me. Smith read his rights out loud. I asked Smith if he understood his rights. Smith stated yes. I asked to initial each right and sign the waiver of his rights. Smith initialed and signed his rights. I asked Smith to read out loud the waiver of rights. Smith read the waiver of rights out loud to me. I asked Smith if he understood. Smith stated yes. Smith signed the waiver of rights. I then began to write a statement for Smith based on his narration of events as to how he got to Seattle, how he robbed the U.S. Bank, 1619 3rd Av., Seattle, WA, and how sorry he was for doing what he did. I completed a three-page statement for Smith. I asked Smith to proofread the statement I just wrote for him. Smith read the statement. Smith asked me to make a correction. On page 2, mid-page, Smith stated that there were "two customers" in the bank when he robbed it and I had written "no customers". I crossed out the word "no" and wrote the word "two". I asked Smith if the rest of the statement was accurate. Smith stated yes. I asked Smith to sign the statement indicating that the facts contained within were the truth. Smith initialed and signed the statement. I then asked Smith to sign the surveillance photos he looked at and identified himself as the person in the photos. Smith signed three bank surveillance photos indicating that it was him in the photos. Smith requested that I get his things out of the Greyhound terminal lockers numbered 203 and 217. At approx. 1430 hrs. I presented Smith an SPD consent to search form. I asked Smith to read out loud his rights to giving consent to search the lockers. Smith read his rights and signed the from giving consent to search locker number 203 and 217 and to place all items into the SPD evidence room. Smith also requested to make a long distance call to his fiancée, Carol Williams, at (856) 309-5893. I called the number and gave the phone to Smith. Smith talked to Williams's son and advised him he was under arrest for bank robbery. During the conversation Smith stated, "no they got me dead to rights". Det. Conrad completed a booking report for me. I briefly viewed the all the evidence collected by the officers. I looked into the pockets of the tan coat. I found a pair of sunglasses in one of the pocket that matches the sunglasses worn by Smith in the surveillance photos. I found some papers and a lighter in the other pocket. I packaged these as evidence. We eventually booked Smith into King County Jail for investigation of robbery. At the jail I obtained the clothing Smith was wearing at the time of the arrest. I obtained all evidence from SA McCluskey and placed all evidence from this investigation into the SPD evidence room.

| INVESTIGATING OFFICER | SERIAL | UNIT | INVESTIGATING OFFICER | SERIAL | UNIT | APPROVING OFFICER | SERIAL |
|---|---|---|---|---|---|---|---|
| Det. S. Jandoc | 5021 | 730 | ORIGINAL | | | for K Auth 4/9) | |

Form 5.7.2 CS 21.866 Rev. 4/97



**SEATTLE POLICE DEPARTMENT**

**CONTINUATION SHEET**

INCIDENT NUMBER: 01-188782
UNIT FILE NUMBER: 91 A SE 85821

| ITEM OR ENTRY | INCIDENT / INCIDENT AND ARREST / ARREST ONLY | FOLLOW-UP / TRAFFIC / COLLISION / SUPERFORM | OTHER: (specify) |
|---|---|---|---|

PAGE 4 OF 4

| 3 | 4-24-01 0800 hrs. Complete this investigative report and prepare case file for presentation to King County Prosecutor's Office. |
|---|---|

ORIGINAL

| INVESTIGATING OFFICER | SERIAL | UNIT | INVESTIGATING OFFICER | SERIAL | UNIT | APPROVING OFFICER | SERIAL |
|---|---|---|---|---|---|---|---|
| Det. S. Jandoc | 5021 | 730 | | | | [signature] K Arat 4/93 | |

Form 5.7.2  CS 21.866  Rev. 4/97



| SEATTLE POLICE DEPARTMENT | STATEMENT FORM | INCIDENT NUMBER: 01-188782 |
|---|---|---|
| | | UNIT FILE NUMBER: 91A SE 85821 |

| DATE | TIME | PLACE |
|---|---|---|
| 4/23/2001 | 1630 | 1110 3rd Ave. Seattle WA |

STATEMENT OF: ☐ COMPLAINANT ☐ WITNESS ☐ VICTIM ☒ OFFICER ☐ OTHER

NAME (LAST, FIRST, M.I.): Conrad, Tom (PSVCTF)    DOB:

(COPY stamp)

On 4-23-01 I was working for the Puget Sound Violent Crimes Task Force, plain clothes and driving in an unmarked vehicle. At approx. 1207 hours I heard SPD Dispatch put out over the air, a priority alarm. A short time later, Dispatch announced there had been a good bank robbery at the U.S Bank, 1619 3RD Ave. and gave the following description of the robber, B/M/40s, 5 8, shaggy hair and wearing a hat. At the time of the call, I was riding in Det. Jandoc's vehicle with SA McCluskey, both with the PSVCTF. We drove into the area of the robbery and began an area check for the robber. Det. Jandoc received reliable information that the robber was somewhere in the area of the Greyhound Bus Station located at 8TH and Stewart St. We responded to the Greyhound station, drove to the back and immediately came into contact with a black male fitting the description of the robber. We detained the subject for a few minutes and determined that he was not the robber and released him. Minute's later containment Officers informed Dispatch that they arrested the robber at the intersection of 8TH and Stewart St. and they had recovered the stolen bank money. Det. Jandoc, SA McCluskey and I responded to 8TH and Stewart and made contact with the arresting Officers and the robber now identified as Aubrey Smith Jr. B/M/05-21-58. Det. Jandoc and I stood by at the patrol car that contained S/Smith while Patrol brought the V/Teller over to the stop location for an ID. S/Smith was taken out of the patrol car and was faced toward the patrol car that the V/Teller was sitting in. I observed Officer P. Macdonald #6279, give the thumbs up that the V/Teller had made a positive ID. Officer Macdonald exited her patrol car, walked over to Det. Jandoc and I and reaffirmed that the V/Teller positively identified S/Smith as the person who robber her at the bank today. Patrol transported S/Smith to FBI Seattle and placed him into a holding cell. We gave S/Smith some water and a soda and then shortly afterwards Det. Jandoc and I interviewed him. At the beginning of the interview, Det. Jandoc laid down several bank surveillance photos in front of S/Smith and told him the pictures tell the story. S/Smith looked at the pictures and said, " That's fucked up, well this is pretty much a done deal" S/Smith went on to say how he had arrived here in Seattle on Saturday the 21ST, and said he came to Seattle with enough money to hold him over until he could find a job, but shortly after arriving in Seattle, someone stole his wallet with all his money. S/Smith explained how he had no money for food or shelter and was sleeping at the bus station until they kicked him out. S/Smith said he wanted to do it the right way and went to the Red Cross near Rainier and S. State St. for food but almost all the food the Red Cross had to offer was in cans and the cans were to heavy to pack around in his bag. S/Smith explained how he needed to pay child support for his son back in New Jersey and he was unemployed in New Jersey and decided to come to Seattle to make a new start. S/Smith said with everything weighing on his mind he had become desperate.

    S/Smith sat quietly for a while and appeared to be thinking about all that he had just told us. Det. Jandoc pointed to the bank surveillance pictures and said to S/Smith, " Is this you?" S/Smith looked at the pictures, shook his head yes and said to Det. Jandoc, " Yeah, that's me" Det. Jandoc asked S/Smith if he had a drug problem he was dealing with. S/Smith said he use to, but hadn't touched drugs in a long time. S/Smith said he was hungry and needed food. Det. Jandoc asked S/Smith, " Why banks, Why rob banks?" S/Smith said to Det. Jandoc, " To be honest, this was the only way to get money without hurting somebody. I know robbing banks is wrong. I saw it on TV, just pass a note, no one gets hurt" S/Smith explained that he had physically hurt his fair share of people when he was younger and to this day he regrets each and every attack. S/Smith said he would rather go hungry than to mug or beat someone up for money.

    At approx. 1335 hours, Det. Jandoc completed an explanation of rights form and asked S/Smith to read his rights out loud to us, place his initials by each line and sign the form. I listened while S/Smith read his constitutional rights to us and I watched S/Smith initial and sign the explanation of rights form, including the waiver of rights portion of the form. I heard S/Smith tell Det. Jandoc that he understood his rights and was willing to talk to Police.

    S/Smith told Det. Jandoc that today , around 11am, he had just finished his visit at the Red Cross and was on the bus heading to down town Seattle when he first started thinking about robbing a bank. S/Smith said he arrived downtown and went into the Credit Union Bank located across the street from the Greyhound Bus Station. S/Smith said he was going to rob that bank but when he got into the bank, he got scared so he walked over to the information counter, asked the lady what it would take to open an account. The bank employee told S/Smith it would take $100.00 to open an account. S/Smith said he thanked the bank employee for the information and walked out of the bank. S/Smith said he walked down the street and decided he was going to rob the U.S. Bank.

WITNESS:

WITNESS:

STATEMENT TAKEN BY: Tom Conrad    X (signature) 4837
SERIAL: 4837    UNIT: 730

TRANSCRIBED BY (Taped / Translated Statements):    SERIAL:    UNIT:    SUPERVISOR:    SERIAL:

Form 9.27 CS 21.87 Rev 12/97    PAGE 1 OF 2

Case 2:03-cv-01053-MJP    Document 13    Filed 07/14/03    Page 14 of 18



**SEATTLE POLICE DEPARTMENT**

# STATEMENT FORM

| INCIDENT NUMBER | 01-188782 |
|---|---|
| UNIT FILE NUMBER | 91A SE 85821 |

| DATE | TIME | PLACE |
|---|---|---|
| 4/23/2001 | 1630 | 1110 3rd Ave. Seattle WA |

STATEMENT OF   COMPLAINANT   WITNESS   VICTIM   OFFICER   OTHER

NAME (LAST, FIRST, M.I.): Conrad, Tom (PSVCTF)       DOB:

S/Smith said prior to robbing the bank, he wanted to pick up a bag to carry the money in so he walked into the Bartells drug store and asked the lady if he could purchase a Bartells bag. The lady told S/Smith that they were not allowed to sell the bags but eventually she just ended up giving S/Smith the bag. S/Smith walked out of Bartells and directly over to the U.S. Bank. S/Smith said once he got into the bank, he picked up a bank deposit slip and wrote a demand note saying, " No buzzer, no scream, no trouble from my coat, $10s, $20s, $50s, $100s, thank you" S/Smith said he walked up to the V/teller's window, a white female, and laid the note down on the counter in front of her. S/Smith said the teller read the note over twice and each time she would say, "ooook" The teller was taking too long so S/Smith told her, " Hurry up, hurry up" S/Smith said he laid the plastic Bartells bag up on the counter so the teller could put the money in the bag. S/Smith said the V/Teller showed him some cash and he told her, "Fine" and he took the money. The V/Teller was moving so slow, S/Smith said he started picking up the money himself and putting it in the bag. S/Smith said he was thinking to himself, I'm going to get caught, I'm putting all this money into a bag and walking out of the bank with a bag of money in my hand, this is not good. S/Smith said he left the bank and headed straight for the Greyhound Bus Station where he had all of his belongings stored in two lockers, locker #s 217 and 203. S/Smith said once he got to Greyhound, he went to the desk and exchanged a fifty-dollar bill from the stolen bank money for two twenties and two fives. S/Smith said he put the twenties into the locker payment machine but the payment machine kept spitting the money back out. S/Smith said he went back to the desk and broke down the change even more and again tried to put the money into the locker payment machine and again the machine spit out the money. S/Smith said at this point, there was Police all around the bus station and he knew he had to get out of there now so he left his property in the lockers, picked up his coat, which contained the bank money, and walked out the front doors of the bus station. S/Smith said he walked about a block away from the bus station before he was stopped by the Police and arrested.



| WITNESS | | | |
|---|---|---|---|
| WITNESS | STATEMENT TAKEN BY: Tom Conrad | SERIAL: 4837 | UNIT: 730 |
| TRANSCRIBED BY (Taped / Translated Statements) | SERIAL   UNIT | SUPERVISOR | SERIAL |

Form 9.27  CS 21.87  Rev 12/97         PAGE 2 OF 2

## SEATTLE POLICE DEPARTMENT

| INCIDENT NUMBER |
| --- |
| 01-188782 |

DATE  04-23-2001        TIME  1329 HRS.        PLACE  FBI ROBBERY TASK FORCE OFFICE

STATEMENT OF:   OFC. SAGE A. FARWELL #5727/412

ON 04-23-2001 AT ABOUT 1206 HRS., I WAS WORKING IN UNIFORM AS MARKED PATROL UNIT 2-MARY-4. I HEARD A BANK ROBBERY CALL COME OUT OVER THE RADIO. THE ROBBERY WAS AT THE 3RD/PINE BRANCH OF U.S. BANK.. THE DESCRIPTION OF THE SUSPECT WAS A B/M IN HIS 40'S ABOUT 5'8" WITH A MEDIUM BUILD WEARING A TAN COAT. THE DESCRIPTION ADDED THAT THE STOLEN MONEY WAS IN A PLASTIC BARTEL'S DRUG STORE BAG.
A FEW MOMENTS LATER, I HEARD OVER THE RADIO THAT UNITS HAD INDICATIONS THAT THE SUSPECT MIGHT BE IN THE GREYHOUND BUS STATION AT 8TH AVE/STEWART ST.. I RESPONDED TO THE BUS STATION TO ASSIST WITH CONTAINMENT.
UPON MY ARRIVAL AT THE STATION, I TOOK UP A ROVING POSITION. AT 8TH AVE AND STEWART, OFC. GRINSTEAD, UNIT 2-QUEEN-4 POINTED OUT A MAN WALKING ON THE SIDEWALK ACROSS THE STREET FROM THE STATION. HE TOLD ME THAT HE HAD RELIABLE INFORMARION THAT POINTED TO THE INDIVIDUAL AS THE ROBBERY SUSPECT.
I SLOWLY FOLLOWED HIM WESTBOUND DOWN STEWART ST.. I NOTICED THAT HE RESEMBLED THE HEIGHT AND BUILD DESCRIPTION GIVEN OVER RADIO. I ALSO NOTICED THAT THE MAN WAS CARRYING A TAN JACKET UNDER HIS RIGHT ARM. I, ALONG WITH GRINSTEAD AND OFC. D. BOLTON (UNIT 2-EDWARD-3) STOPPED THE INDIVIDUAL AT 7TH AVE/STEWART ST..
AS OFC. GRINSTEAD WAS PATTING DOWN THE INDIVIDUAL (LATER I.D.'D AS SMITH, AUBREY JR. B/M/05-21-58) I LOOKED AT THE TAN JACKET, WHICH HAD BEEN TOSSED ONTO THE HOOD OF A PATROL VEHICLE THAT SMITH WAS BEING PATTED DOWN AGAINST. I NOTICED THAT A WHITE PLASTIC BAG WAS STICKING OUT OF A POCKET OF THE TAN JACKET BELONGING TO SMITH. I LOOKED AT IT CLOSER AND SAW THAT IT WAS A BARTELL'S DRUG STORE BAG. I PULLED OUT THE BAG AND LOOKED INSIDE. INSIDE THE BAG, I FOUND A LARGE AMOUNT OF CASH AND PROPERTY BELONGING TO U.S. BANK.
I ADVISED OFC. GRINSTEAD OF WHAT I FOUND AND SMITH WAS PLACED UNDER ARREST. I IMMEDIATELY MIRANDIZED SMITH, READING OFF OF THE SPD-RESOURCE BOOK. I ASKED SMITH IF HE UNDERSTOOD HIS RIGHTS. HE VERBALLY STATED THAT HE UNDERSTOOD HIS RIGHTS AND HE CHOSE NOT TO INVOKE THEM AT THAT TIME.
A FEW MOMENTS LATER, I WAS ADVISED BY OTHER OFFICERS WITH A WITNESS FROM THE BANK THAT SMITH WAS THE CORRECT SUSPECT.
I THEN RESPONDED TO THE FBI ROBBERY TASK FORCE OFFICE TO COMPLETE NECESSARY PAPERWORK. *****END OF STATEMENT*****

STATEMENT TAKEN BY:                            SIGNED: _____ #5727/412

WITNESS:                                       WITNESS:

FORM 9.27   REV. 12/94   STATEMNT.DOT

| SEATTLE POLICE DEPARTMENT  | STATEMENT FORM | INCIDENT NUMBER 01-188782 |
|---|---|---|
| | | UNIT FILE NUMBER |

| DATE | TIME | PLACE | | | | | |
|---|---|---|---|---|---|---|---|
| 4/23/2001 | 1324 | WEST PRECINCT | | | | | |
| STATEMENT OF | ☐ COMPLAINANT | ☐ WITNESS | ☐ VICTIM | ☒ OFFICER | ☐ OTHER | | DOB |
| NAME (LAST, FIRST, M.I.) GRINSTEAD, MARK | | | | | | | |

*COPY*

On April 23, 2001 at about 1200 hours I was working a uniformed one-man marked patrol unit 2Q4.

At about 1205 I was at 2nd Avenue and Battery St. when I picked up a signal from a confidential device. I started to track the signal South bound on 2nd Avenue. At 1206 hours Communications advised they had a priority alarm in the Battery St. area. At 1207 hours Communications broadcast a robbery had just occurred at 1619 3rd Avenue U.S. Bank.

Communication broadcast a suspect description. The suspect was described as a black male in his 40's, about 5'08" average build, wearing a tan jacket.

At about 1212 I received reliable information that the property at 8th and Stewart (Grey Hound Bus Terminal) contained items that had been taken from U. S. Bank. At about 1218 hours I took up a containment location at 8th and Stewart facing East bound. At about 1220 hours I saw a black male wearing a black print shirt and black pants carrying a tan jacket walk out of the North side door of the Grey Hound terminal. As the suspect walked out the door I received reliable information from my confidential device that the Black male later identified as, Smith, Aubrey Jr. 05-21-1958 had property that had been taken from U. S. Bank on his persons.

Smith jay-walked North bound across Stewart St. I continued to receive reliable information identifying Smith as having property that belongs to U. S. Bank on his person. I saw 2M4 Officer S. Farewell. Drive West Bound on Stewart. I flagged Officer Farwell #5727 down and pointed Smith out to him as a possible Robbery Suspect. I continued to receive reliable information indicating Smith as the possible Robbery Suspect. Smith was holding a tan jacket in his right arm and his physical description was consistent with the information provided by witnesses. I followed Smith as he walked on the North side of Stewart from 8th Avenue. At the corner of 7th and Stewart I saw 2E3 Officer Bolton #5256 also pointed at Smith. As Smith waited for the pedestrian light to change, I approached Smith ordering him to remove his hands from his pockets. I took Smith's coat and tossed it onto the hood of a patrol vehicle.

Officer S. Farwell informed me this was the suspect and I placed him under arrest. Search incident to arrest I found a green handled folding knife in Smith's right front pocket. I placed Smith into the back seat of my patrol vehicle and then transported him to 3rd and Spring St. At 3rd and Spring St. I turned custody of Smith over to the Puget Sound Violent Crimes Task Force. I then wrote this statement.

EOS

| WITNESS | | | | |
|---|---|---|---|---|
| WITNESS | STATEMENT TAKEN BY M. Grinstead | | SERIAL 6378 | UNIT 412 |
| TRANSCRIBED BY (Taped / Translated Statements) | SERIAL | UNIT | SUPERVISOR | SERIAL |

Form 9.27  CS 21.87  Rev 12/97                                                    PAGE 1 OF 1

| SEATTLE POLICE DEPARTMENT | STATEMENT FORM | INCIDENT NUMBER 01-188782 |
|---|---|---|
| | | UNIT FILE NUMBER |

| DATE | TIME | PLACE |
|---|---|---|
| 4/23/2001 | 1315 | ROBBERY TASK FORCE OFFICE |

STATEMENT OF: ☐ COMPLAINANT ☐ WITNESS ☐ VICTIM ☒ OFFICER ☐ OTHER

NAME (LAST, FIRST, M.I.): BOLTON, DONALD D.

DOB:

ON 04-23-01 I WAS WORKING MARKED PATROL UNIT 2E3. AT APPROX 1207 HOURS RADIO BROADCAST THAT THEY HAD A PRIORITY ALARM IN THE AREA OF BATTERY ST. I DROVE TOWARD THAT LOCATION AND AT APPROX SUMMIT AVE E AND E JOHN I PICKED UP A SIGNAL FROM A CONFIDENTIAL DEVICE. WHILE TRACKING THIS SIGNAL, RADIO THEN BROADCAST THAT A BANK ROBBERY HAD OCCURRED AT U.S. BANK LOCATED AT 1619 3 AVE. I CONTINUED TRACKING THE SIGNAL AND ARRIVED IN THE AREA OF 9 AND STEWART ST ALONG WITH OTHER OFFICERS. AT THIS TIME I WAS RECEIVING RELIABLE INFORMATION FROM MY CONFIDENTIAL DEVICE THAT PROPERTY BELONGING TO U.S. BANK WAS INSIDE THE GREY HOUND BUS TERMINAL LOCATED ON THE S/W CORNER OF 9 AND STEWART ST. OFFICERS INSIDE THE PROPERTY OF THE TERMINAL BROADCAST TO CONTAIN THE BUILDING WITH THE CONFIDENTIAL DEVICES. I PLACED MY PATROL VEHICLE IN FRONT OF THE MAIN NORTH SIDE ENTRANCE TO THE BUS TERMINAL AND AT THIS TIME MY CONFIDENTIAL DEVICE WAS INDICATING TEN BARS AT THE FRONT DOOR. AS I WAS HOLDING THIS POSITION OUTSIDE THE FRONT DOOR, THE DOOR OPENED AND A B/M LATER ID'D AS AUBREY SMITH, EXITED THE TERMINAL. I SAW THAT SMITH HAD A TAN COAT WRAPPED UNDER HIS RIGHT ARM AND THAT HE PHYSICALLY MATCHED THE DESCRIPTION GIVEN OF THE SUSPECT WHO ROBBED U.S. BANK. MY CONFIDENTIAL DEVICE INDICATED AT FULL STRENGTH ON SMTIH AS HE WALKED INFRONT OF MY PATROL VEHICLE AND CROSSED THE STREET. I BEGAN TO FOLLOW SMITH AND ALSO NOTICED OFFICER GRINSTEAD, WHO ALSO HAS A CONFIDENTIAL DEVICE, BEGIN FOLLOWING SMITH. I FOLLOWED SMITH FOR APPROX ONE BLOCK FROM THE TERMINAL AND MY CONFIDENTIAL DEVICE CONTINUED GIVING RELIABLE INFORMATION THAT SMITH HAD PROPERTY BELONGING TO U.S. BANK. I PULLED MY VEHICLE IN FRONT OF SMITHS PATH AS HE WALKED W/B ON STEWART ST AT 7 AVE AND ASSISTED OFFICER GRINSTEAD AND FARWELL IN DETAINING SMITH. I SAW OFFICER FARWELL RECOVER PROPERTY BELONGING TO U.S. BANK THAT HAD BEEN TAKEN IN THE ROBBERY. SMITH WAS TAKEN INTO CUSTODY WITHOUT FURTHER INCIDENT. SMITH WAS ALSO IDENTIFIED AT THE SCENE BY A BANK EMPLOYEE AS THE CORRECT SUSPECT.

COPY

X /s/ D. Bolton

| WITNESS | STATEMENT TAKEN BY | | | SERIAL | UNIT |
|---|---|---|---|---|---|
| WITNESS | D. Bolton | | | 5256 | 442 |
| TRANSCRIBED BY (Taped / Translated Statements) | | SERIAL | UNIT | SUPERVISOR | SERIAL |

Form 9.27  CS 21.87  Rev 12/97                                                          PAGE 1 OF 1

| SEATTLE POLICE DEPARTMENT | STATEMENT FORM | INCIDENT NUMBER 01-188782 |
|---|---|---|
| | | UNIT FILE NUMBER |

| DATE | TIME | PLACE |
|---|---|---|
| 4/23/2001 | 1844 | Seattle Wa. West Pct. |

STATEMENT OF: ☐ COMPLAINANT  ☐ WITNESS  ☐ VICTIM  ☒ OFFICER  ☐ OTHER

NAME (LAST, FIRST, M.I.): Ofc. MacDonald #6279     DOB:

On 04-23-01 I was working a two officer marked patrol unit, in uniform, with Officer Espinoza, unit 2K01. At approx. 1211 I responded to a bank robbery in the 1600 blk 3 Ave. I assisted in an area check for the suspect and containment in the area of 8 Ave. and Stewart St. A possible suspect in the robbery was being detained at approx. 7 Ave. and Stewart St. I responded to the bank, (1619 3 Ave.), and transported W/Kinnunen, Irene (bank teller) to 7 Ave. and Stewart St., to identify the possible suspect. The suspect was standing on the North side of Stewart St. and our vehicle was approx. 15 ft. East of where he was standing. W/Kinnunen stated that she could see that possible suspect clearly. I asked W/Kinnunen if the possible suspect was the one that robbed the bank. W/Kinnunen stated, "Well, he doesn't have the hat and coat on, but I think that's him....yeah...it's probably him". I told W/Kinnunen to take another look at him. W/Kinnunen looked again at the possible suspect and stated, "I'm pretty sure it's him but I couldn't swear by it.". I transported W/Kinnunen back to the bank and wrote this statement. * END *

COPY

| WITNESS | | | |
|---|---|---|---|
| WITNESS | STATEMENT TAKEN BY: Self | SERIAL: 6279 | UNIT: 412 |
| TRANSCRIBED BY (Taped / Translated Statements) | SERIAL   UNIT | SUPERVISOR | SERIAL |

Form 9.27  CS 21.87  Rev 12/97                              PAGE 1 OF 1